Mary C. Geddes
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Petitioner

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JACK L. EARL, JR.,<br><br>        Petitioner,<br><br>vs.<br><br>CRAIG TURNBULL,<br><br>        Respondent. | Case No. 3:02-cv-0224-HRH-DMS<br><br>**REPLY TO RESPONSE<br>TO BRIEF ON THE MERITS AND<br>MOTION TO DISMISS** |

      Jack Earl, the petitioner, has previously filed his brief on the merits of his habeas claims.  He continues to rely upon that document, i.e., the facts, authorities, and arguments cited therein, but offers the following additional argument in light of the respondent's briefing.

A.   **HABEAS RELIEF SHOULD BE ORDERED BASED ON THE STATE COURT'S FAILURE TO CONDUCT INQUIRY IN FACE OF INHERENTLY PREJUDICIAL COURTROOM ARRANGEMENTS**

Jack Earl was convicted after a jury trial in which the trial court judge permitted court security officers to shift their courtroom positions depending on whether a testifying defense witness was incarcerated. Over defense objection, the positions shifted five times during the defense case. During the testimony of incarcerated witnesses, a security officer was stationed at the jury door, next to the jury. The testimony of Jack Earl was also handled in this manner, even though Mr. Earl had been present during the entire trial, without incident. The trial court overruled defense objection and ultimately denied a motion for mistrial. The court indicated that it deferred to the judgment of the courtroom security officers in such matters.

The state's response to Mr. Earl's claim for habeas relief is as follows. It argues that, as the Supreme Court has said that there is nothing inherently prejudicial about the presence of security guards in the courtroom *(Holbrook v. Flynn*, 475 U.S. 560, 568, 106 S. Ct. 1340 (1986)), Mr. Earl has not shown that the court practice in this case was contrary to Supreme Court decisional law.

But of course, Mr. Earl's claims did not involve an objection to the mere, stationary presence of security guards in his courtroom.

First, the state court's denial of the defense motion for a mistrial, based upon the distinctive shifts of security guards positions during the testimony of in-custody

2

witnesses, was an unreasonable application of clearly established law because the practice itself <u>was</u> inherently prejudicial, a determination easily made on the basis of Supreme Court jurisprudence. No relief was ordered in *Holbrook* because the court determined that the mere presence of uniformed officers in the courtroom (sitting in the same place in the courtroom during the trial) was itself "ambiguous." But there was nothing ambiguous about the practice that occurred during this trial. The officers' positions were not static and therefore ambiguous. The officers' positions shifted depending upon who was testifying.

The practice not only ultimately identified the defendant's presently incarcerated status, but the positioning itself provided an "unmistakable indication of the need to separate" the incarcerated from the members of the jury, and from which <u>dangerousness</u> could be inferred. According to Supreme Court jurisprudence, a constant reminder of an accused's incarcerated status may affect a juror's judgment, and .therefore presents an unacceptable risk of impermissible factors coming into play. *Turner v. Louisiana*, 379 U.S. 466, 473, 85 S. Ct. 546, 550, 13 L. Ed. 2d 424, 429 (1965) (placing a jury in the custody of deputy sheriffs who were also witnesses for the prosecution creates an unacceptable risk of impermissible factors coming into play). *See also Estelle v. Williams*, 425 US 501, 503-04 (1976) (prisoner cannot be compelled to wear prison clothing during trial because there is a recognition that the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment). Indeed, shackling has long been viewed as inherently prejudicial because it is a constant reminder

and because dangerousness can be inferred from such status. *See Deck v. Missouri*, 544 U.S. 622, 626, 125 S. Ct. 2007 (2005).

Second, the trial court's admitted practice of wholly delegating decision-making authority with respect to all arrangements within the courtroom was contrary to law. To implement the presumption of innocence, the courts must be alert to factors that may undermine the fairness of the fact-finding process. *Estelle v. Williams*, 425 U.S. 501, 503 (1976). In the administration of criminal justice, courts must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 1072, 25 L. Ed. 2d 368, 375 (1970). Finally, the Supreme Court has left no doubt that the probability of deleterious effects on fundamental rights calls for close judicial scrutiny. *Estes v. Texas*, 381 U.S. 532, 85 S. Ct. 1628, 14 L. Ed. 2d 543 (1965); *In re Murchison*, 349 U.S. 133, 75 S. Ct. 623, 99 L. Ed. 942 (1955). Courts must do the best they can to evaluate the likely effects of a particular procedure, based on reason, principle, and common human experience. *Estelle v. Williams*, 425 U.S. 501, 504 (1976). Obviously, the court in this case unreasonably failed this responsibility, erring by its delegation of judicial responsibility to nonjudicial officers.

Furthermore, the appellate court clearly erred when it <u>presumed the crucial factual finding which was never made</u>, i.e., that the obvious shifts and re-positioning of officers were 'necessary' because of the witnesses and Mr. Earl's incarcerated status. The trial court made no such determination as it merely deferred to the courtroom security

officers. 28 U.S.C. § 2254(d)(2) (habeas review is available for a state court decision that was based on an unreasonable determination of the facts in light of the evidence presented").

**B.    HABEAS RELIEF SHOULD BE ORDERED BASED ON THE STATE COURT'S FAILURE TO SUPPRESS IN-CUSTODY STATEMENTS THAT WERE NOT PROCEEDED BY MIRANDA ADVISEMENTS**

In its pleading, the respondent alleges that Mr. Earl has taken certain facts out of context and that the state court's decision – that Earl was not in custody for *Miranda* purposes – was reasonable. (Resp. at 29) As already discussed at length in Mr. Earl's opening brief, the trial court's analysis was contrary to Supreme Court jurisprudence because it involved consideration and at least partial reliance upon a defendant's subjective beliefs with respect to custody. The trial court's conclusion was also suspect because the court expressly stated that a different rule of law applies in murder cases. Finally, where the trial court's reasoning was almost entirely devoid of findings of historical fact, and its conclusions were only summary, its decision was unreasonable.

The appellate court decision was also erroneous and unreasonable because: the court failed to consider the 'marathon' length of the encounter, the limited scope of Mr. Earl's consents to travel to the police substation and main station, the pre-conditions specified by the police on Mr. Earl's ability to leave, *inter alia*, all circumstances relevant to the application of the Supreme Court query, "how a reasonable man in the suspect's position would have understood his situation."

5

The respondent has not answered these specific claims, but has instead cherry-picked from the transcript for quotes from Mr. Earl which seem to reflect his eventual acquiescence to the conditions under which he is questioned.

The state courts unreasonably concluded that Mr. Earl was not "in custody" based on an irrelevant considerations of Mr. Earl's motivations, of the nature of the case (a murder investigation), and failed to accurately and objectively describe the circumstances to which he was conveyed, in which he was confined, and in which he found and incriminated himself.[1]

DATED this 17th day of May, 2007.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

/s/ Mary C. Geddes
Assistant Federal Defender
Alaska Bar No. 8511157
601 West 5th Avenue, Suite 800
Anchorage, AK  99501
Ph:  (907) 646-3400
Fax:  (907) 646-3480
mary_geddes@fd.org

---

[1] It is evident that Mr. Earl did not agree to go to any police station for the purpose of answering questions. It is evident that he remained because he was told that he had to. It is evident that the police had the ability to obtain warm clothing from his home because they controlled the premises.

Certification:

I certify that on May 17, 2007, a copy of the foregoing document, with attachments, was served electronically on:

Kenneth M. Rosenstein, Esq.


/s/ Mary C. Geddes