Kenneth M. Rosenstein
Assistant Attorney General
Office of Special Prosecutions and Appeals
310 K Street, Suite 308
Anchorage, Alaska 99501
Telephone: (907) 269-6250
Facsimile: (907) 269-6270
Email: ken.rosenstein@alaska.gov

Attorney for Respondent

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| JACK L. EARL, JR., Petitioner, | No. 3:02-cv-224-HRH |
| vs. | RESPONSE TO OBJECTIONS TO INITIAL REPORT AND RECOMMENDATION **PROPOSED** |
| CRAIG TURNBULL, Respondent. | |

The magistrate judge has filed an initial report recommending the denial of relief regarding Earl's non-Fourth-Amendment habeas claims and the dismissal of his Fourth Amendment claims. [Docket 100] Earl has filed objections to the report and recommendation. [Docket 105] This is the state's response to Earl's objections.

A. <u>With one exception, Earl's objections to the report and recommendation regarding his claim relating to the placement of judicial service officers are not well taken</u>

1. *The state partially agrees with Earl's objection to the term used to refer to the state judicial service officers*

Earl's first factual objection notes that what the court has referred to as a "guard" or "security guards" are more commonly referred to as "JS" or "JS officers." [Docket 105 at 1]  Earl asks that they be referred using either of those terms.  In fact, those terms are slang.  The officers are more formally known as judicial service officers.  The state views Earl's objection as trivial.  If the court sustains it, then the officers should be referred using their proper titles, not slang.

2. *The record supports the trial court's observation that Earl admitted in his testimony that he was in jail*

In assessing the potential prejudice from the placement in the courtroom of an additional officer, the magistrate judge cited the state trial court's observation that Earl had admitted in his testimony that he was in jail. [Docket 100 at 19 (citing Exh. E at 1005 (Tr. 2154)]  Earl's lawyer states that she has been unable to find Earl's admission.  [Docket 105 at 4]  But that does not render the trial court's observation subject to challenge in this court.

The state trial court made the observation while considering Earl's mistrial motion, and Earl did not, at that time, challenge its accuracy.  Moreover, the court's observation is a central aspect of the court's denial of the

mistrial motion, which is the focus of Earl's habeas claim. Yet this is the first time Earl has challenged the observation. Earl should not be permitted use his objections to the magistrate judge's report to challenge for the first time the state court record.

Earl also ignores Cyril Reape's testimony. Reape was asked by the prosecutor how often since 1993 he had seen Earl. [Exh. E at 658 (Tr. 1807)] Reape responded, "Up until November [1998] quite often." [*Id.*] And asked whether he and Earl had lived together or in the same building, Reape replied, "Same facility, not same building." [*Id.*] Earl acknowledged this testimony in clarifying his habeas claim. [*See* Clarification of Ground Four in Petition for Writ of Habeas Corpus at 2-3, dated March 4, 2003 (this document does not appear in the court's electronic docket)]

*3. Earl has inadequately supported his remaining factual objections*

Earl's remaining factual objections are undocumented. [Docket 105 at 1-2] For each one, he has not cited where in the record of the underlying state court proceeding his view of the facts is documented. Neither the court nor the state should be forced to search that record to find and verify the facts Earl contests.

That said, the state has a response to one of Earl's objections. He asserts that the state trial court "made no inquiry into the necessity of the fifth

officer." [Docket 105 at 2] The reason the court made no inquiry was because Earl's lawyer the court, "I understand why the police officer has to be there." [Exh. E at 605 (Tr. 1754)] The lawyer specifically objected on the ground that security concerns could be satisfied "by having the officer on the other side of that door instead of on this side of the door." [*Id.*] Thus, contrary to Earl's objection, he consented to the officer's presence and objected only to his precise placement in the courtroom.

4. *The denial of a mistrial based on the appearance of an additional judicial service officer during the testimony of Earl and two other incarcerated witnesses was not contrary to or an unreasonable application of federal law*

Earl asserts a general objection to the magistrate judge's conclusion that the state court's refusal to grant a mistrial based on the presence of an additional judicial service officer was neither contrary to, nor an unreasonable application of, federal law. [Docket 105 at 2] He claims, without elaboration, that the state court "failed to extend clearly-established legal principles" to the presence of the officer. [*Id.*]

The magistrate judge concluded that the appearance of a fifth judicial service officer was not inherently prejudicial. [Docket 100 at 18-19] Earl specifically objects to this conclusion, asserting four specific points. [Docket 105 at 2-3]

Earl first asserts that the magistrate judge mistakenly assumed that inherent prejudice would result only if the officer were a "constant feature throughout the trial." Earl misreads the recommendation. The gist of the language that he challenges is simply that the officer's presence during the testimony of only some witnesses did not create a significant risk that the jury would draw any improper inferences. [*See* Docket 100 at 19]

Earl argues that due process requires judicial scrutiny of courtroom security practices observed during part, but not all, of a defendant's trial. [Docket 105 at 2 (citing *Larson v. Palmateer*, 515 F.3d 1057, 1063 (9th Cir. 2008))] But the state has never suggested that the placement of the fifth officer was exempt from judicial scrutiny; in fact, it was considered by the state trial court when Earl moved for a mistrial.

Earl's second point asserts that the magistrate judge mistakenly found the absence of any clear inference of guilt from the officer's presence. [Docket 105 at 2] An example of an inherently prejudicial practice is the forced appearance of the defendant before the jury in prison clothes or bound and gagged. *Estelle v. Williams*, 425 U.S. 501, 504-06, 96 S.Ct. 1691, 1693-94 (1976) (prison clothes); *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (bound and gagged). Earl has cited no case suggesting that the appearance of one additional officer results in a similar degree of prejudice. And he essentially ignores *Holbrook v. Flynn*, 475 U.S. 560, 106 S.Ct. 1340 (1986),

which held that having *four* state troopers sit in spectator area behind defendant for a two-month trial was not inherently prejudicial. *Id.* at 568-69, 106 S.Ct. at 1345-46. While the officer did not appear at random times during Earl's trial, the state court took appropriate steps to reduce the association with the testimony of incarcerated witnesses by ensuring that the placement of the additional officer took place outside the jury's presence. [Docket 100 at 18-19] Moreover, to the extent that there was any prejudice, Earl declined the state court's offer of a cautionary instruction. [*Id.* at 19]

Earl's third point asserts that the magistrate judge mistakenly found that the state court's inquiry had been sufficient, asserting that the court never expressly determined whether the additional officer was necessary. [Docket 105 at 2-3]  Earl cites no clearly established federal law that would require a state court to invariably make such a determination.

And Earl's fourth point asserts that the magistrate judge mistakenly gave too much consideration the absence of any indication in the state court record that the jury was actually influenced by the officer's presence. [Docket 105 at 2-3 (citing Docket 100 at 19)]  In essence, this is merely a reiteration of his claim that the officer's placement was inherently prejudicial and fails for the reasons cited above.

Earl also objects to the magistrate judge's conclusion that the state court's decision was not based on an unreasonable determination of the facts.

[Docket 105 at 2 (citing Docket 100 at 21)] Earl again points to the fact that the state trial court failed to make a specific determination regarding the necessity of the additional officer. [*Id.*] But as the magistrate judge noted, *Flynn*, the controlling federal law, does not require a determination in every case. [Docket 100 at 21 (citing *Holbrook v. Flynn*, 475 U.S. 560, 106 S.Ct. 1340)] Absent a clearly established duty to make a determination, the state court's failure to do so cannot be deemed unreasonable.

Earl also asserts that the Alaska Court of Appeals made an "unreasonable determination" by presuming facts that were never established in the trial court. [Docket 105 at 3 (citing *Earl v. State*, 2002 WL 531097, *6 (Alaska App., April 10, 2002))] If the Alaska Court of Appeals presumed facts, those facts were obvious and beyond reasonable dispute: "Earl and his two witnesses were in custody and *it was necessary to have some security while they testified*." *Earl*, 2002 WL 531097, *6 (emphasis added).

Relying again on *Larson*, Earl asserts that the use of an inherently prejudicial practice may not be justified by some after-the-fact rationale. [Docket 105 at 3 (citing *Larson*, 515 F.3d at 1063)] But Earl again assumes that he was subjected to an inherently prejudicial practice. *Larson*, and the case it cites, *Missouri v. Deck*, 544 U.S. 622, 125 S.Ct. 2007 (2005), both involved inherently prejudicial practices: the defendant in *Larson* appeared in front of the jury in a security leg brace, the defendant in *Deck* in shackles.

B. Earl's objections to the report and recommendation regarding his claim relating to his statements to the police are not well taken

*1. Incorporation of Earl's single-spaced four-page list of facts into the magistrate judge's report is unnecessary*

Earl suggests that the magistrate judge's report omits a "large number of relevant facts" that Earl listed in his brief on the merits. [Docket 105 at 3 (referring to Docket 84 at 19-23)] To the extent that this is an objection, it is not well taken in the absence of any claim that those facts are necessary to the magistrate judge's recommendation.

Earl specifically objects to several facts. [Docket 105 at 3-4] Earl does not specify the basis for his objections; he only cites testimony that he claims contradicts the magistrate judge. Earl's objections should be overruled for their lack of specificity. More important, they should be overruled in each case because the record supports the magistrate judge.

First, Earl objects to the statement that Officer "Dahl had [him] wait in Dahl's patrol vehicle because it was cold out." [Docket 100 at 3, *objected to in* Docket 105 at 3] Earl claims that the temperature "was not the motivating reason" for directing him to the patrol car. [Docket 105 at 3] The record clearly supports the magistrate judge's description. Officer Dahl testified:

> It was wintertime out; [Earl] wasn't wearing heavy clothing. Sergeant Cobb – the crime scene being a crime scene, I removed any person from that so as not to contaminate it and any evidence therein. [Earl] was cold. *My car was the best*

> *place I knew to take Mr. Earl, just because it was out of the inclement weather.*
>
> . . . .
>
> [Earl] did mention it was cold out. At one point he did want to go back into the apartment. However, I wouldn't let him go back in because it was a crime scene. Whether he specifically asked for a jacket, I – I don't know. *I did have him sit in my car because it was cold out, though.*

[Exh. C at 15, 17 (Tr. 80, 82); *see also* Exh. C at 39-40 (Tr. 104-05)]

Earl asserts, contrary to the magistrate judge's report, that he did not agree to go to the police substation. [Docket 105 at 3] But the recording of the contact between Earl and Officer Dahl, however, reveals that Earl did agree to go:

> Q: [by Officer Dahl] Okay. Do you need to go to the bathroom.
>
> A; [by Earl] Sir yeah badly.
>
> Q: Listen. I'll tell you what, I can't let you go back in there cause it's a crime scene right new. Let me run you over to the Spenard Sub Station [*sic*] and you can use the bathroom there okay, is that alright [*sic*].
>
> A: Dude I gotta go now. . . . Am I under arrest.
>
> Q: No sir you are not under arrest. . . . [I]t's just that whenever
>
> A: I gotta pee.
>
> Q: I know and it'll take like two minutes to get there.
>
> A: *Okay go-go-go.*

[Exh. B-2 at 3-4 (emphasis added)] Earl suggests that the officer had to take him back home – the crime scene – after he had used the bathroom at the substation. [Docket 105 at 3] He offers no legal support for this.

Earl asserts the magistrate judge's report fails to mention that his refusal to meet with homicide investigators was not respected. [Docket 105 at 4] But the report acknowledges that Earl "said he didn't want to help the investigators out." [Docket 100 at 5 (citing Exh. B.3 at 17)] When he arrived at the main police station with homicide investigator Sgt. Mike Grimes, Earl apparently saw his friend Jamie Green for a moment but did not talk to her. [Exh. B-4 at 3] Sgt. Grimes reassured Earl that he was not under arrest but the officers wanted to know what he had seen and what happened. [*Id.*] Earl responded, "I got – I got nothin'. *I'll just tell you whatever I know*." [Exh. B-4 at 4 (emphasis added)] The record supports the magistrate judge. Though Earl might have initially said he did not want to help the investigators, he willingly went with Sgt. Grimes to the main station, and he willingly agreed to tell him whatever he knew.

Earl implies that the magistrate judge's report omits the facts that he went to the main station for a limited purpose, to provide support for Greene, but he was not permitted to talk to her; instead, he was interviewed. [Docket 105 at 4 (citing Docket 100 at 6)] But the report mentions that Earl "did

not meet with Jamie . . . [but] was questioned over the next several hours by [the police]." [Docket 100 at 6]

2. *The conclusion that Earl was not in Miranda custody was a reasonable application of federal law*

The magistrate judge correctly applied the standard set forth in *Yarborough v. Alvarado*, 541 U.S. 652, 124 S.Ct. 2140 (2004), to conclude that the state court's conclusion that Earl was not in *Miranda* custody did not amount to an unreasonable application of federal law. [Docket 100 at 26-27] In *Alvarado*, the Court recognized that the range of reasonable judgment a court can exercise depends on the nature of the applicable legal rule; "[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id*. at 664, 124 S.Ct. at 2149. And because the test of *Miranda* custody is general and "fair-minded jurists could disagree over whether Alvarado was in custody," the state court application of federal was reasonable. *Id*. at 664-65, 124 S.Ct. at 2149-50.

The magistrate judge acknowledged that some facts favored a finding that Earl was in custody, but others did not; specifically, he went voluntarily to the police station, was told repeatedly that he was not under arrest, and was released at the conclusion of the interview. [Docket 100 at 26-27] The state would add that Earl never asked to leave and made no effort to otherwise terminate the interview.

Earl focuses on the purported limited purposes for which he had agreed to go to the police substation and then to the main station. [Docket 105 at 4] He appears to argue that any deviation from those purposes effectively placed him in custody, suggesting that the police should have returned him to his apartment, which he could not enter because it was still a crime scene. He cites no authority to support this. He further asserts that the police used a ruse (providing support for Greene) to get him to agree to go to the main station. [*Id.*] But the transcript of the interview reveals that Earl offered no complaint when, after he saw Greene, the police did not take him talk to her but instead began to interview him. [*See* Exh. B-4 at 3]

*3. The state courts' decisions were based on reasonable factual determinations*

Earl asserts that the state trial court's ruling on his custodial status was based on an unreasonable factual determination because the court said that the "rationale for *Miranda* warnings 'do not apply and should not equally to cases where someone is stabbed to death.'" [Docket 105 at 5 (quoting Exh. C at 160 (Tr. 225))] Earl not only misquotes the transcript, he also misrepresents its content by taking out of context. The trial court actually said:

> [W]hy don't officers give the *Miranda* warnings even when they're not required to do so. I don't know why. . . . The question is whether they were required. And it does – I think it – *it's well for all of us to remember that the rules of the*

> *playing field do not apply and shouldn't apply in cases where someone is stabbed to death.*

[Exh. C at 160 (Tr. 225) (emphasis added); *see also* Docket 100 at 27-28] Despite this ambiguous comment, the magistrate judge could found no basis to conclude that the court's fact-finding process was unreasonable. [Docket 100 at 28] The state trial court applied the appropriate legal standard for determining *Miranda* custody. [*Id.*]

*4. Earl's statements were voluntary*

Earl objects to the magistrate judge's conclusion that Earl's statements were voluntary. [Docket 105 at 5] The magistrate judge implicitly concluded that the state courts applied the correct federal law and, under the *Alvarado* standard, concluded that fair-minded judges could differ over whether Earl's statements were voluntary; therefore the application of federal law was reasonable. [Docket 100 at 29] Earl's objection is little more than a reiteration of his view of the facts as presented in his brief on the merits, which the magistrate judge fully considered and correctly rejected.

C. Conclusion

None of Earl's objections to the magistrate judge's report and recommendation are well taken. They should be overruled and, consistent with the recommendation, Earl's petition should be denied and dismissed.

DATED this 14th day of April, 2008, at Anchorage, Alaska.

TALIS J. COLBERG
ATTORNEY GENERAL OF
THE STATE OF ALASKA

s/ Kenneth M. Rosenstein
Assistant Attorney General
Office of Special Prosecutions and Appeals
310 K Street, Suite 308
Anchorage, Alaska 99501
Telephone: (907) 269-6250
Facsimile: (907) 269-6270
e-mail: ken.rosenstein@alaska.gov
Alaska Bar. No. 7605051

**Certificate of Service**

I certify that on April 14, 2008, a copy of the foregoing Response to Objections to Initial Report and Recommendation was served electronically on **Mary Geddes**.

s/ **Kenneth M. Rosenstein (7605051)**